UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN BLATT,<br><br>    Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK, JAMES P. O'NEILL, individually and in his official capacity as Police Commissioner of the New York City Police Department, JOHN DOES 1-10, police officials whose names are unknown to Plaintiff,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

  By and through his attorneys, Newman Ferrara LLP, Plaintiff Jonathan Blatt alleges upon knowledge, information, and/or belief as follows:

### PRELIMINARY STATEMENT

  1. Plaintiff Jonathan Blatt brings this action to vindicate his rights under the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983.

  2. It is alleged herein that the disciplinary system of the New York City Police Department is flawed by an ingrained double standard fueled by favoritism and undue influence where New York City Police Department ("NYPD") officials meddle in internal probes to give special treatment to the benefit of some members but retaliate against and punish more harshly others.

  3. Plaintiff alleges he is one of the members of the department who was a victim of this unfair and flawed disciplinary system in retaliation for his role in exposing problems with the NYPD's promotion testing process, including but not limited to allegations of cheating on make-up exams.

4. The New York City Police Department, including, but not limited to, Police Commissioner James O'Neill and other NYPD officials, whose names are not currently known to Plaintiff, have taken actions against Plaintiff consistent with an established custom, pattern and practice of unfairly using the disciplinary process to retaliate against members of the service who have fallen into their disfavor.

5. The retaliatory actions taken against Plaintiff include the extension of his probationary period following his promotion to the rank of lieutenant, his demotion from lieutenant to sergeant without any notice or hearing, his placement on modified duty status and the filing of charges and specifications after these other retaliatory actions had been taken.

6. The extension of Plaintiff's probationary period was executed without him being given the requisite notice of the reasons for the extension when he was only informed that the "Police Department is reviewing your probationary service regarding an incident that occurred in 2017".

7. Plaintiff was demoted from lieutenant to sergeant even though his evaluations up until that time demonstrated he was performing his new position competently and satisfactorily.

8. Defendants' bad faith motivations in demoting Plaintiff are evinced by a more negative evaluation being completed, and back dated, <u>after</u> Plaintiff had already been demoted, as he was referred to in the evaluation as "Sergeant Blatt".

9. These actions were taken against him with the knowledge, and under the authority, of the Police Commissioner, who is empowered as the municipal final decision maker to discipline and penalize members of the NYPD pursuant to NYC Administrative Law 14-115(a).

10. The Police Commissioner exercised this authority in violation of Civil Service laws and NYPD regulations governing the disciplinary process.

11. The motivation to impose disparate and draconian penalties upon Plaintiff was to retaliate against him for his participation in state and federal court litigation to expose and remedy problems with the City and NYPD's implementation of personnel policies, in particular problems endemic in the promotion examination process.

12. It is further alleged herein that as a result of the actions of said officials Plaintiff has been damaged personally and financially. The harm to Plaintiff is ongoing and continues to impede his ability to obtain promotions he is otherwise entitled to within the NYPD.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

14. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

15. Plaintiff Jonathan Blatt is an employee of the New York City Police Department ("NYPD") of the City of New York. He was promoted from sergeant to lieutenant on or about December 21, 2016. He was also the lead plaintiff in two lawsuits challenging the administration of the Lieutenant's exam that was administered on April 18, 2015.

16. Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York. Defendant City is a "person" for purposes of enforcement of the rights guaranteed under 42 U.S.C. § 1983. Defendant City is the employer of Defendant O'Neill and the John Doe Defendants whose names are unknown.

17. James P. O'Neill ("O'Neill") is the Police Commissioner of the NYPD, and a policy maker of the department and the City. He is the chief executive officer of the NYPD. In that

capacity, he has made decisions, taken actions and/or directed others to take actions that have negatively impacted Plaintiff as alleged herein.

18. John Does 1-10 are officials within the NYPD who acted, on their own initiative or at the direction of O'Neill or others whose names are unknown, to retaliate against Plaintiff because of his filing of lawsuits that alleged widespread cheating by sergeants during the administration of the Lieutenant's civil service exam that was the subject of two lawsuits Plaintiff filed against the City.

## FACTUAL ALLEGATIONS

19. Plaintiff has been employed by the New York City Police Department ("NYPD") since July 8, 2008.

20. He began his employment with the NYPD as a Police Officer.

21. In October 2011, Plaintiff took the civil service exam for the position of sergeant. On or about August 29, 2013, he was promoted to the position of sergeant.

22. On April 18, 2015, Plaintiff took the civil service exam for the position of lieutenant.

23. On March 24, 2016, he was the lead plaintiff in a federal lawsuit filed against the City of New York challenging the administration and results of the Lieutenant exam. On May 3, 2016, an Amended Complaint was filed in the federal case. *Blatt et al. v. City of New York et al.*, 16-CV-02168 (PAE), Dkt. No. 20.

24. In his first federal suit, Plaintiff alleged that there were opportunities for candidates to cheat during the administration of the initial examination and the make-up examination. AC ¶¶ 42-82. Specifically, he alleged in his declaration in support of plaintiff's application for a preliminary injunction in that matter that (a) during the initial exam test-takers were allowed to congregate in the bathroom where there were no proctors present, (b) test-takers were allowed to confer during the protest sessions, wherein they could review the answers to the examination and their own answers, (c)

4

test-takers were not searched for electronic devices prior to reviewing the model answers, (d) prior to the administration of the make-up exam, the exam questions and answers were circulated among several sergeants via an online message board frequented by NYPD officers known as the "Rising Star," (e) a post on the Rising Star contained a photograph of the officially "correct" answers that was identical to the answer key provided to test-takers during the protest sessions, (f) some of the officers who took the make-up exam had prior knowledge of the questions and answers on the exam, and (g) officers on the eligible list for the position of lieutenant contained sergeants who may have cheated on the exam. Declaration of Jonathan Blatt, dated March 23, 2016, ¶¶ 7-47. *Blatt et al. v. City of New York et al.*, 16-CV-02168 (PAE), Dkt. No. 5, pp. 8-13.

25. On May 16, 2016, the federal action was voluntarily dismissed by the plaintiffs.

26. On May 17, 2016, Plaintiff was the lead petitioner in an Article 78 proceeding that sought to declare that (a) the administration of the Lieutenant exam contained topics that were not included in the Notice of Examination, (b) the inclusion of said topics violated the New York State Civil Service Laws, the Administrative Code of the City of New York, and Article V, Section 6 of the New York State Constitution, and (c) the eligibility list was invalid because test-takers for the make-up examination had notice of the subjects to be tested due to the widespread posting and dissemination of questions and answers to the examination.

27. On May 17, 2016, the Supreme Court granted the application for an Order to Show Cause for Preliminary Injunction and Temporary Restraining Order. Pursuant to the Order to Show Cause, the City was enjoined from promoting any sergeants pending the hearing on plaintiff's' motion for a preliminary injunction.

28. On June 27, 2016, the parties in the Article 78 executed a stipulation of settlement that provided that all individuals who scored 65 or above on the examination and either answered

5

incorrectly, or did not answer, would receive credit for five questions on the aforementioned exam, as if those questions were answered correctly.

29. During this time, then Chief of Personnel Raymond Spinella and Commander of Personnel Bureau James Murtagh were present in the courtroom monitoring the aforementioned proceedings. During this time Commissioner O'Neill was Chief of the Department. Spinella now serves as Commissioner O'Neill's Chief of Staff and Murtagh is one of O'Neill's Assistant Chiefs.

30. During the pendency of the prior litigation, the allegations involved therein received public attention, and Plaintiff was quoted in the media.

31. In addition to print media coverage, the Rising Star also covered the litigation and several anonymous comments were made by members of the NYPD that accused Plaintiff, and the other plaintiffs, of lying about the allegations contained in the lawsuits and referring to them as "the Slimey Nine." Other anonymous posters praised their actions.

32. As a result of the Stipulation of Settlement in the Article 78, Plaintiff was placed on the eligibility list for promotion to Lieutenant and was promoted to that position on December 21, 2016.

33. Subsequent to his appointment, Plaintiff received a four-month evaluation for the period January 16, 2017 to April 16, 2017, as a lieutenant. He received an overall evaluation of 3.5 out of possible 5. Among the comments in the evaluation were the following: "Lt. Blatt has excellent oral communication skills", "Lt. Blatt is a newly promoted Lt. and with continued exposure to his Platoon, he will be able to grow and become a better supervisor."

34. Plaintiff also received an annual evaluation for the period January 16, 2017 to January 15, 2018. He received an overall evaluation of 4 out of a possible 5. Among the comments were the following: "Lieutenant Blatt supports department policy and adheres to department directives,"

"Lieutenant Blatt is sensitive to the personnel needs of his subordinates," "Lieutenant Blatt has performed well thus far despite his limited time assigned to this command."

35. Additionally, despite receiving high marks in his two prior evaluations, Plaintiff was also evaluated for the period April 21, 2017 to October 20, 2017. In this ten-month evaluation which included the period of Plaintiff's annual review, he received a lower score (3) than on his annual evaluation (4) or his four-month evaluation (3.5). Additionally, in the comment section the rater referred to Plaintiff as "sergeant" although during the period covered by the evaluation he was still serving as a lieutenant. On information and belief, this evaluation was completed after his subsequent demotion.

36. On November 29, 2017, Plaintiff took the Captain's civil service promotion exam and received a score of 96. Plaintiff was placed on the eligible captain list with a ranking number of five out of two hundred and sixty-six lieutenants who were eligible for promotion.

37. On December 19, 2017, Plaintiff was notified that his probation period as lieutenant was being extended for an additional six months, despite receiving high ratings and positive evaluations during his probationary period that began on or about December 21, 2016.

38. His extended probation period was for the time period January 31, 2018 through July 29, 2018.

39. The only information Plaintiff was given at that time as to the reason for the probation extension was that "the Police Department is reviewing your probationary service regarding an incident that occurred on or about 2017."

40. On July 18, 2018, just prior to the expiration of his extended probationary period, Captain Timothy Lynch met Plaintiff at his house and told him that he had to report to One Police Plaza.

41. At One Police Plaza, Plaintiff was advised by Equal Employment Opportunity ("EEO") Captain Kobell and an EEO Deputy Inspector that he was being placed on modified duty and his service weapon was taken from him.

42. On said date, Plaintiff was also advised by Lt. Timothy Brown, a lieutenant in the Risk Mitigation Division, that the Police Commissioner terminated his service as a lieutenant and directed that Plaintiff be demoted to sergeant. At this time, he was not made aware of why he was demoted or modified.

43. On July 19, 2018, information was posted on the Rising Star website regarding Plaintiff's demotion. On said date, a copy of a message from the Personnel Orders Division regarding Plaintiff's demotion was posted on the Rising Star website. Plaintiff was not responsible for the public dissemination of the personnel information. Throughout the comments posted on the website, references were made to the fact that Plaintiff had been one of the plaintiffs who was responsible for the overhaul of the promotion process. Additionally, there were posts that stated that only four lieutenants had been demoted in the last fifteen years. Another poster observed that even with multiple internal complaints an officer is usually not demoted because of such complaints.

44. On July 21, 2018, an article appeared in the New York Daily News containing information regarding Plaintiff's demotion, the fact that he had been modified and the nature of the pending internal disciplinary charges that had been filed. On information and belief, it was stated in the article that the "NYPD confirmed the change in [Plaintiff's] duty status, but declined to disclose the reason for the move."

45. In January and March of 2018, prior to someone within the NYPD providing information regarding Plaintiff's demotion to the Daily News, the newspaper had run a series of

articles critical of the NYPD's disciplinary process that exposed a number of discipline cases alleged to have been influenced by both favoritism and/or retaliatory purposes.

46. Following the publication of the Daily News articles about deep flaws and lack of transparency in the disciplinary process, Defendant Commissioner O'Neill announced the appointment of a panel to review the disciplinary process.

47. One of the issues of concern the panel has been asked to address is the influence of politics and meddling in the current system.

48. The President of the Sergeant's Benevolent Association Edward Mullins has made public statements that a double standard for discipline exists among chiefs in the NYPD.

49. The President of the NYPD Captain Endowment Association, Roy Richter, has publicly noted interference in the disciplinary process by top brass.

50. In April 2018, BuzzFeed News reported being told by members of the NYPD that the disciplinary system is unfair by letting some guilty officers off the hook while punishing others for reporting misconduct or for getting on their supervisor's bad side.

51. A written request dated July 24, 2018, was sent from the Commanding Officer of the NYPD's Equal Opportunity Division to the Department Advocate's Office requesting preparation of charges against "Sergeant Blatt."

52. On or about July 25, 2018, Plaintiff was advised that internal disciplinary charges had been filed against him on August 18, 2017, by an officer who alleged that he had made inappropriate remarks. Plaintiff was further advised on that date that the Police Commissioner had issued charges against him in connection with the allegation.

53. On October 31, 2018, Plaintiff was further advised that he had been placed on Level 1 – Command Monitoring, effective October 1, 2018.

54. According to the Notice of Examination, Promotion to Captain, a lieutenant must first serve permanently in the position for at least two years and successfully complete the probationary period. As of December 21, 2018, Plaintiff would have been eligible for a promotion to Captain. Due to his wrongful demotion, he is currently not eligible and has been passed over for promotion to Captain.

55. To this date, no hearing has been held with respect to the pending charges, and Plaintiff has not had an opportunity to contest his demotion.

56. On information and belief, the Police Commissioner has retaliated against Plaintiff for his litigation efforts wherein he challenged the administration of the aforementioned exam and accused the Department of promoting sergeants who had cheated on the exam.

57. Additionally, Plaintiff alleges he has been singled out for harsher and disparate treatment, including, but not limited to, demotion to sergeant, modified duty, and level 1-command monitoring, in bad faith and in violation of his civil rights, as a result of his efforts to seek redress for grievances against the department via legal action.

58. Plaintiff also alleges that he has been subjected to selective enforcement of departmental rules and regulations due to his advocacy as others have not been similarly treated during the pendency of departmental charges and specifications wherein allegations of serious misconduct had been alleged.

59. On information and belief, other officers, including, but not limited to, probationary lieutenants with pending departmental charges did not have their probationary periods extended during the pendency of such charges. Additionally, said lieutenants were not terminated from their rank and permanently demoted to sergeant prior to any notice, hearing and final determination of pending charges.

60. On information and belief, the actions of the Police Commissioner and other employees of the Department as mentioned herein will deter others from seeking redress for their grievances and exercising their First Amendment rights.

61. Plaintiff has suffered the harms of a flawed disciplinary system enabled and perpetuated by the NYPD with a custom and practice of denying officers the protections they are entitled to pursuant to New York Civil Service Law Sections 75, 75-b and 76. ("Sections 75, 75-b and 76").[1]

62. Plaintiff was a victim of a longstanding and pervasive pattern and practice of the NYPD of erroneously communicating, both implicitly and explicitly, to members of service on probation following a promotion that they are subject to the same probationary conditions as a newly hired police officer, to wit that they have no protections under Sections 75, 75-b and 76, and may be terminated from their new position without notice and/or a hearing.

63. When Plaintiff was advised he was being terminated as a lieutenant and demoted back to sergeant, he was not aware nor made aware that permanent employees who had received a promotion and were serving a probationary period in the promoted position were entitled to Sections 75, 75-b and 76 protections.

64. On July 18, 2018, Plaintiff was advised by Lieutenant Timothy Brown that the decision to demote him came from the Police Commissioner and that there was nothing he could about it.

---

[1] Section 75 of the New York Civil Service Law provides that certain employees are not to be removed or subjected to disciplinary action, except for incompetency or misconduct shown following a hearing. Section 75-b prohibits a public employer from dismissing or taking disciplinary action or adverse personnel action against an employee who discloses information regarding a violation of law or information which the employee reasonably believes to be true and constitutes an improper governmental action. Section 76 of the New York Civil Service Law allows for an employee to appeal an adverse employment action taken against him or her.

11

65. On information and belief, the collective bargaining agreements of the Lieutenant's Benevolent Association and Sergeant's Benevolent Association do not contain contractual language that covers removal or disciplinary matters for members on promotion probation.

66. In the absence of any such contractual language, the disciplinary protections of Civil Rights Law Sections 75, 75-b and 76 should be applied.

67. The NYPD has a custom and practice of not applying Sections 75, 75-b and 76 protections to members of the service on promotion probation.

68. This deliberate indifference to the rights of members of the NYPD, including Plaintiff, results in the denial and/or rescission of promotions without the effected member of the service being given notice and opportunity to be heard.

69. As a result of the foregoing, Plaintiff is fearful that his advocacy of his rights as an employee of the City and the Department will continue to negatively impact his career but believes he has no alternative to protect himself from further acts of retaliation and selective enforcement without the Court's intervention.

## **FEDERAL CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
**(Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution)**

70. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

71. Plaintiff alleges that the actions mentioned above were part of the custom of the Department and the Commissioner to act arbitrarily in regards to whether to extend an employee's promotion probation period, terminate an employee, demote an employee, or otherwise to discipline an employee in advance of departmental charges having been filed, in advance of notice to the

employee that such charges were filed, without affording notice to the employee regarding the process available, if any, to challenge said demotion, etc., during the pendency of said charges, and without any hearings on the same.

72.     Said actions or omissions are evidence of disparate treatment, selective enforcement, and procedural and substantive due process violations.

73.     As a result of the Defendants' actions, Plaintiff was denied due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF
### (Violation of the First Amendment of the United States Constitution)

74.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

75.     Based on the foregoing allegations, the speech and other conduct of Plaintiff, including, but not limited to, the aforementioned litigations, were protected by the First Amendment.

76.     Defendant O'Neill and the other John Doe Defendants have taken adverse actions against Plaintiff.

77.     Based on the differential treatment of other probationary lieutenants with pending disciplinary charges, Plaintiff alleges that there is circumstantial evidence that the aforementioned adverse actions are causally linked to Plaintiff's advocacy as aforementioned.

78.     As a result of the actions aforestated, Defendants have violated Plaintiff's First Amendment rights as secured by 42 U.S.C. § 1983.

## THIRD CLAIM FOR RELIEF
### (Municipal Liability for Violation of the First and Fourteenth Amendments)

79.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if full set forth herein.

80. Based on the foregoing allegations, Plaintiff's First and Fourteenth Amendment rights were violated pursuant to a custom of deliberate indifference of failing to afford members of the service on promotion probation, including Plaintiff, the disciplinary protections they are entitled to under state law.

81. The failure to apply the protections of Civil Service Law Sections 75, 75-b and 76 to employees on promotion probation, including Plaintiff, was done with the knowledge and deliberate indifference of the Police Commissioner and other senior NYPD officials who knew how the disciplinary process was flawed and the harm it was inflicting on members of the service, including Plaintiff, who were subjected to draconian penalties motivated by retaliatory purposes.

82. This deliberate indifference in applying disciplinary protections to employees on promotion probation was promulgated for the purpose of perpetuating, protecting and preserving a disciplinary system affording commanding officers, senior police officials and the Police Commissioner the unchecked ability to make disciplinary decisions motivated by favoritism and/or for retaliatory purposes.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and relief against the Defendants as follows:

a. Award Plaintiff compensatory damages;

b. Award Plaintiff all reasonable attorneys' fees and costs, including expert fees, of this action;

c. Issue an injunction enjoining the department hearing regarding pending charges against Plaintiff until this matter has been resolved;

d. Issue an order directing Defendant O'Neill to restore Plaintiff to the status of Lieutenant and credit his time he served as Sergeant following his wrongful demotion making him eligible for promotion to Captain and issue back pay from July 2018; and

e. Such other relief as the Court deems appropriate under the circumstances.

Dated: February 5, 2019
New York, New York

Respectfully submitted,

NEWMAN FERRARA LLP

Debra S. Cohen
dcohen@nfllp.com
Randolph M. McLaughlin
rmclaughlin@nfllp.com
Danielle B. Sullivan
dsullivan@nfllp.com
1250 Broadway, 27th Floor
New York, NY 10001
Tel. (212) 619-5400
Fax (212) 619-3090
*Attorneys for Plaintiff*
